Potts, Davis & Co. v. Commissioner.
Potts, Davis & Co. v. Commissioner
Docket No. 158-67.
United States Tax Court
T.C. Memo 1968-257; 1968 Tax Ct. Memo LEXIS 41; 27 T.C.M. (CCH) 1363; T.C.M. (RIA) 68257; November 12, 1968, Filed. Peter M. Gunnar, *42 131 Pine St., Salem, Ore., for the petitioner. Merritt S. Yoelin, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency of $3,176.09 in petitioner's income tax for the fiscal year ended March 31, 1964. The issue is whether petitioner is entitled to deduct $3,900 in each of its fiscal years ended March 31, 1962, 1963, and 1964 [1] for depreciation of files containing information useful in an insurance business. Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner has a fiscal taxable year ending on March 31. It filed its Federal corporate income tax returns for the fiscal years ended March 31, 1962, 1963, and 1964, with the district director of internal *43 revenue for the District of Oregon. Its principal place of business was Salem, Oregon, when it filed its petition in this case. Petitioner was incorporated under the laws of Oregon on April 10, 1961. It was organized to engage in the bonding business and the business of selling health and accident, casualty, fire, and life insurance. Petitioner's original shareholders were Kenneth Potts, Leslie E. Davis, and Peter M. Gunnar, an attorney (hereinafter referred to as Potts, Davis, and Gunnar, respectively). Late in 1961 or early in 1962, Gunnar sold his shares to Davis. In 1961 petitioner purchased all the stock of Grabenhorst-Ken Potts Insurance Agency, Inc. (hereinafter referred to as Grabenhorst-Potts), for $47,034. This price equalled the fair market value of the corporation's tangible assets plus one and one-half times its average annual commissions for the preceding three years. Petitioner promptly liquidated Grabenhorst-Potts and received its assets in a section 334(b)(2) dissolution. [2] Pursuant to that section, petitioner allocated a cost basis to the assets. The allocation was as follows: *44 1364 Cost of stock ($23,517 X 2)
$47,034.00
Liabilities 17,000.29
$64,034.29
Less: Cash
$ 5,290.44
Accounts receivable 10,736.27
16,026.71
Value for other assets $48,007.58
Records
$23,400.00
Furniture and fixtures
1,600.00
Prepaid expense
262.50
Covenant not to compete:
Grabenhorst
$11,758.50
Potts 5,982.00 17,740.50
Goodwill 5,004.58
Total allocated to assets other than cash and accounts receivable $48,007.58 Respondent has not questioned this allocation. The allocation of $23,400 to the account entitled "Records" resulted from multiplying 936, the number of active insurance files, by $25. The insurance files filled thirteen 27-inch drawers. They consisted of approximately 89,750 separate pages of paper. The files were organized on a client-byclient basis. They contained much data necessary to petitioner for client service, including: a. Correspondence with companies, underwriters, claims departments, insureds, finance companies, etc.; b. Claims adjustments; c. Property appraisals for fire insurance ratings; d. Premium audits; e. Premium financing records; and f. Rating bureau information. *45 The files had no value strictly as a list of customers. Petitioner continued to service clients of Grabenhorst-Potts after taking over its business. [3] The insurance files were essential to continuing this service. Among other things, the files provided a continuing entree to and contact with a client. As renewal policies were written on clients represented in the Grabenhorst-Potts files, new information was added to the files to keep them current. Over a period of time petitioner acquired clients in addition to those of Grabenhorst-Potts. Some of the new clients were referrals from older clients who were satisfied with petitioner's services. On its Federal income tax returns for the fiscal years ended March 31, 1962, 1963, and 1964, petitioner deducted $3,900 annually for depreciation of the insurance files. In computing the deductions, petitioner assigned a six-year useful life to the files. [4]
*46 In his statutory notice of deficiency for the taxable year ended March 31, 1964, respondent denied these deductions. The relevant portion of the statement attached to the statutory notice was as follows: It has been determined that your deductions of $3,900.00 in each of the years ended March 31, 1962, March 31, 1963, and March 31, 1964., for depreciation of insurance records are unallowable because such records constitute an intangible asset in the nature of goodwill having no determinable life for depreciation purposes. Your income has been increased accordingly. In subparagraph 5.E. of its petition, petitioner alleged that the insurance files had a useful life of six years. In his answer respondent denied the allegations of subparagraph 5.E. of the petition. In his opening statement respondent more than once reiterated his position that the insurance files had no determinable useful life. Opinion The issue is whether petitioner is entitled to deduct depreciation for the insurance files. [5] Respondent challenges petitioner's right to the deduction on several grounds. One ground is that the files do not have a determinable useful life. *47 We must sustain respondent's position. Petitioner has not proved that the files have a determinable useful life. Petitioner might have met its burden of proof on this question by establishing with "reasonable accuracy [6] that the files have a six-year useful 1365 life, as it alleges in its petition. [7] Indeed the only evidence in the record relating to the question of determinable useful life was submitted in an effort to prove a six-year life. This evidence is, however, very scant. Moreover, it is vague and conclusory. It altogether fails to persuade us that the files have a six-year useful life or indeed any other determinable useful life. [8]
Petitioner directed *48 the main thrust of its case to the question whether the files are a tangible or an intangible asset. Petitioner appears to argue that if the files are a tangible asset they must have a determinable useful life. However, we are not persuaded by the argument. It is not true that every tangible asset has a determinable useful life. Land is a tangible asset which has no determinable useful life. Cf. Income Tax Regs. sec. 1.167(a)-2. Moreover, even if it be assumed that every tangible asset other than land has an inherent limited useful life, it does not follow that that life is in every case reasonably determinable. [9] Accordingly, the correctness of respondent's position is not affected by the outcome of the question whether the files are a tangible as opposed to an intangible asset. We therefore do not pass upon the question. [10]
*49 In its original brief, petitioner claims that respondent does not raise any question regarding the useful life of the files. In its reply brief, petitioner claims that respondent raises a question about useful life for the first time in his original brief. These claims are, however, unfounded. They ignore both the pleadings and respondent's opening statement. The pleadings clearly join an issue over determinable useful life. In his opening statement, respondent more than once reiterated his position that the files have no determinable useful life. Because petitioner failed to prove that the files have a determinable useful life, it is not entitled to deduct depreciation for them in its taxable years ended March 31, 1962, 1963 and 1964. Decision will entered for the respondent. Footnotes
1. In the statutory notice of deficiency, respondent reduced certain net operating loss carryovers. Because of these reduction, this Court has jurisdiction under sec. 6214(b), I.R.C. 1954↩, to determine the correctness of adjustments which respondent made for the fiscal years ended March 31, 1962 and 1963.
2. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
3. There was no formal announcement to the Grabenhorst-Potts clients that petitioner had taken over its business. The clients were informed of the change on a personal contact basis. There was an announcement in the newspapers, however, concerning petitioner's formation.↩
4. Based on the fact that fire insurance policies are renewed every three years, petitioner assigned a useful life to the files of six years, or two renewal periods. However, petitioner normally wrote policies for one-and five-year terms as well as for three-year terms.↩
5. There is no issue before us regarding petitioner's right, under sec. 165(a), to a loss deduction for the files as they become valueless, in whole or in part.↩
6. Grant T. Rudie, Jr., 49 T.C. 131, 138↩ (1967). 7. There may or may not have been other ways for petitioner to meet its burden of proof. We limit ourselves to a consideration of what petitioner chose to do. ↩
8. The case at bar is distinguishable from Manhattan Co. of Virginia, Inc., 50 T.C. 78↩ (1968). One distinction is that the records in that case contained evidence which established the taxpayer's rate of customer turnover. No such evidence is in the record in the present case.
9. See Income Tax Regs. sec. 1.167(a)-1(b). Compare Rev. Rul. 68-232, 1968-1 CB 79↩, asserting that an art object has no determinable life. 10. While we do not decide whether the files are a tangible or an intangible asset, we want to point out that we seriously doubt whether petitioner would have paid $23.400 for 89,750 pieces of paper. We think it is likely that a substantial portion of the value of the files was in the information they contained, an intangible asset.↩